## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Christian Action League of Minnesota
and Ann Redding,

        Plaintiffs,

v.

Mike Freeman, Hennepin County
Attorney, in his official capacity,

        Defendant.

Court File No. _____

**COMPLAINT**

---

### INTRODUCTION

The Christian Action League of Minnesota and Ann Redding, anti-pornography protestors, challenge the constitutionality of Minnesota's harassment statute, Minnesota Statutes § 609.748, subdivision 1(a)(1). The statutory provision prohibits and deters political speech protected under the First Amendment of the U.S. Constitution. It is facially unconstitutional and overbroad, interferes with the right of association, and is a content-based regulation.

Section 609.748, subdivision 1(a)(1) allows individuals to obtain a harassment order—and with it, a threat of criminal prosecution—to stop political speech activities "regardless of the relationship between the actor and the intended target." There is no statutory exception in Minnesota Statutes § 609.748, subdivision 1(a)(1) to protect

political activities. The statute chills protected speech and intimidates citizens into censoring their own speech.

Meanwhile, a political person or political organization with a harassment order in place against them, which could result in criminal prosecution and incarceration if they continue, deters their otherwise protected political speech activities. Here, a harassment order did cripple the protected free speech activities of the Christian Action League, its agents, their association with others, and infringed upon their political efforts in protesting against matters of public concern related to pornography.

Under Minnesota Statutes § 609.748, subdivision 1(a)(1), in the context of the provision "regardless of the relationship between the actor and the intended target," which provides no exception for political speech activities, the Christian Action League and its agents, having been subjected to a previous harassment order and have had to severely curtail their future political activities despite their previously successful anti-pornography campaigns.

Hence, the Plaintiff's First Amendment rights of political speech and association have been violated under 42 U.S.C. § 1983. The Plaintiffs are entitled to prospective relief against the offending statute allowing the Christian Action League, its agents, and Redding, to return to the normalcy of previous political activities against pornography.

## JURISDICTIONAL STATEMENT

1.      Plaintiffs proceed in this action in federal district court under 28 U.S.C. §
1331 (federal question), 28 U.S.C. § 2201 (declaratory judgments), and 42 U.S.C. §
1983 (civil rights).

2.      Venue is proper in this action under 28 U.S.C. § 1391 because the
Defendant is a county attorney within the State of Minnesota who has the authority to
initiate criminal prosecutions based on violations of civil harassment restraining
orders under Minnesota Statutes § 609.748.  Moreover, the events or omissions giving
rise to the asserted allegations and claims occurred in Hennepin County, Minnesota,
which is within the federal judicial district of Minnesota.

## PARTIES

**Plaintiffs**

### Plaintiff Christian Action League of Minnesota

3.      The Plaintiff Christian Action League of Minnesota is a 501(c)(3) non-
profit corporation located in Minneapolis, Minnesota.

4.      The Christian Action League is an association in which its subscribers
(its agents) engage in advocacy and communication with community members,
businesses, individuals, and others on matters of public concern such as pornography,
sexual exploitation, and sexually-oriented businesses.

5.      The Christian Action League believes that its core political speech
activities include, but are not limited to, the monthly publication of a newsletter titled

"The Beacon," sending postcards, emails, and other methods of communications to persons or entities or both. The communications include attempts to associate with others regarding its positions, opinions, interpretations, requested actions, and beliefs on matters of public concern.

6.      The Christian Action League, with its association with others in its messaging, seeks to encourage community members to support its positions, join in its peaceful protests, send communications to others to initiate and advocate the political debate on matters of public concern such as pornography, sexual exploitation, and sexually-oriented businesses.

7.      The Christian Action League and its agents believe that their work and association involves core political speech activities concerning political, ideological, or other matters of opinion on issues of public concern such as pornography, sexual exploitation, and sexually-oriented businesses.

8.      The Christian Action League also promotes peaceful and creative core political speech methodologies to others, whether directly or indirectly, to minimize or eliminate the impact or support of pornography, sexual exploitation, and sexually-oriented businesses consistent with its mission.

9.      The Christian Action League is not a vendor, meaning that it does not seek to sell products, merchandise or services to others.

10.     The Christian Action League has engaged in and proposes to engage in future core political speech activities which fall under the phrase in Minnesota Statutes

§ 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and the intended target."

11.     The Christian Action League is subject to Minnesota Statutes § 609.748 harassment restraining orders for political speech and association.

12.     Individuals and entities have targeted and will continue to target the Christian Action League with threats of harassment which may lead to future harassment proceedings that can result in criminal prosecution, incarceration and fines.

13.     The Christian Action League, its agents, and Redding have been subject to harassment proceedings under Minnesota Statutes § 609.748.

14.     As found on its website, the Christian Action League "believes in the sacred dignity of every human being. Pornography is the antithesis of dignity because it degrades and dehumanizes God's gift of human sexuality." Its mission is "to honor human dignity by changing society's acceptance of pornography and to prevent our children from being exposed to its darkness."

15.     The Christian Action League and its agents are aware that criminal prosecution could occur if it or any of its agents continue to engage in their activities under Minnesota's harassment laws, in particular, Minnesota Statutes §609.748, subdivision 6.

16.     Because of the threat of harassment orders and subsequent criminal prosecution under Minnesota's harassment statute—and having been subjected to a

harassment order related to its activities—the Christian Action League and its agents have curtailed most if not all of their core political speech activities against pornography, sexual exploitation, and sexually-oriented businesses.

**Plaintiff Ann Redding**

17.     The Plaintiff Ann Redding is the co-founder and president of the Christian Action League. She resides in Hennepin County. Redding has been and continues to be an activist through the League to promote its mission in "Exposing the Harms of Our Sexually Exploitative Culture." Redding is also an "agent" for the League. She believes that her work with the Christian Action League involves core political speech activities concerning political, ideological, or other matters of opinion on issues of public concern such as pornography, sexual exploitation, and sexually-oriented businesses.

18.     Redding has engaged in and proposes to engage in future political speech activities which will under Minnesota Statutes § 609.748, subdivision 1(a)(1)— particularly the phrase "regardless of the relationship between the actor and the intended target"—subject her to further harassment proceedings and immediate threat of criminal prosecution, incarceration and monetary fines. Redding has been already subjected to harassment proceedings and an order under § 609.748 relating to her political speech activities.

19.     Redding believes that her core political speech activities includes her advocacy and her communications with community members, friends, family, political

officials, businesses, other groups, other corporate entities, business owners, and others and includes the League publishing Redding's opinions, positions, interpretations, requested actions, and beliefs to initiate and advocate the political debate on matters of public concern such as pornography, sexual exploitation, and sexually-oriented businesses.

20.     Redding also advocates peaceful and creative methods, whether directly or indirectly, to minimize or eliminate the impact or support of pornography, sexual exploitation, and sexually-oriented businesses consistent with its mission.

21.     Redding associates not only with the Christian Action League and its agents, but also seeks to associate with other like-minded people or others who do not currently know about her or the organization's peaceful protests to minimize or eliminate the impact or support of pornography, sexual exploitation, and sexually-oriented businesses.

22.     Redding is aware that criminal prosecution could occur if she continues to engage in her political speech activities under Minnesota's harassment laws, in particular, Minnesota Statutes § 609.748, subdivision 6.

23.     Because of the threat of harassment orders and possible subsequent criminal prosecution under Minnesota's harassment statute—and having been subjected to a harassment order related to its activities—Redding has curtailed most if not all of her core political speech activities.

**Defendant**

**County Attorney Mike Freeman**

24.     The Defendant, Mike Freeman, the County Attorney for Hennepin County, sued only in his official capacity, is the person holding the office responsible for the criminal prosecution of violators of any harassment order under Minnesota Statutes § 609.748, subdivision 6(i): "The court also shall refer the violation of the order to the appropriate prosecuting authority for possible prosecution under paragraph (b), (c), or (d)."

25.     Freeman, once a violation is prosecuted, can subject the Christian Action League, its agents, or Redding to fines and imprisonment under § 609.748, subdivision 6:

>  (a) A person who violates a restraining order issued under this section is subject to the penalties provided in paragraphs (b) to (d).
>
>  (b) Except as otherwise provided in paragraphs (c) and (d), when a temporary restraining order or a restraining order is granted under this section and the respondent knows of the order, violation of the order is a misdemeanor.
>
>  (c) A person is guilty of a gross misdemeanor who violates the order within ten years of a previous qualified domestic violence-related offense conviction or adjudication of delinquency.
>
>  (d) A person is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more

than $10,000, or both, if the person violates the
order.

26.     Freeman, through his office as Hennepin County Attorney, enforces and
prosecutes criminal laws in the name of the state of Minnesota. Minnesota delegates
the duties of prosecuting crimes to the offices of county attorneys through Minnesota
Statutes § 388.051.

## JURISDICTION

27.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) (federal
question) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (Civil Rights) and the First
Amendment of the United States Constitution.

28.     This Court is authorized to grant declaratory and injunctive relief under
28 U.S.C. §§ 2201 and 2202 (declaratory judgments), Federal Rules of Civil Procedure,
Rules 57 and 65, and under its general legal and equitable powers.

29.     Venue is proper in this Court under 28 U.S.C. § 1391. Plaintiffs further
invoke the pendent jurisdiction of this Court to consider claims arising under state
law, if any.

### Constitutional and Statutory Provisions at Issue

30.     The First Amendment of the United States Constitution:

Congress shall make no law…abridging the freedom of
speech, or the right of the people peaceably to assemble,
and to petition the Government for a redress of grievances.

31.     The Fourteenth Amendment's Due Process and Equal Protection

Clauses apply to state and local governments:

> Section 1… nor shall any state deprive any person of life,
> liberty, or property, without due process of law; nor deny
> to any person within its jurisdiction the equal protection of
> the laws.

32.     Minnesota Statutes § 609.748, subd. 1(a)(1) defines "harassment":

> a single incident of physical or sexual assault, a single
> incident of harassment under section 609.749, subdivision
> 2, clause (8), a single incident of nonconsensual
> dissemination of private sexual images under section
> 617.261, or repeated incidents of intrusive or unwanted
> acts, words, or gestures that have a substantial adverse
> effect or are intended to have a substantial adverse effect
> on the safety, security, or privacy of another, *regardless of the
> relationship between the actor and the intended target*….

Emphasis added.

33.     Minnesota Statutes § 609.748, subd. 6, provides criminal penalties for

violating a harassment restraining order:

> (a) A person who violates a restraining order issued under
>     this section is subject to the penalties provided in
>     paragraphs (b) to (d).
>
> (b) Except as otherwise provided in paragraphs (c) and (d),
>     when a temporary restraining order or a restraining
>     order is granted under this section and the respondent
>     knows of the order, violation of the order is a
>     misdemeanor.
>
> (c) A person is guilty of a gross misdemeanor who violates
>     the order within ten years of a previous qualified
>     domestic violence-related offense conviction or
>     adjudication of delinquency.

> (d) A person is guilty of a felony and may be sentenced to
> imprisonment for not more than five years or to
> payment of a fine of not more than $10,000, or both, if
> the person violates the order…

34.     Minnesota Statutes § 609.748, subd. 6(i), provides that the court refer

matters to the appropriate prosecuting authority for possible prosecution:

> (e) The court also shall refer the violation of the order to the
> appropriate prosecuting authority for possible
> prosecution under paragraph (b), (c), or (d).

## FACTUAL BACKGROUND

**I.      Political activities on matters of public concern include suggested
boycotts related to pornography.**

### A.      The City Pages is a goliath of alternative weekly newspapers in the Twin Cities.

35.     City Pages is an alternative Minneapolis, Minnesota newspaper founded

in August 1979 as Sweet Potato, a monthly newspaper that covered the local music

scene. The publication went weekly in December 1981 and took on its new name—

City Pages. http://www.citypages.com/about (last visited Mar. 22, 2020).

36.     In May of 2015, the Star Tribune purchased City Pages from the Voice

Media Group identifying it as the largest alternative weekly in the Twin Cities. In

announcing the purchase, it was reported that the weekly City Pages reached "361,000

readers a month in print and record[ed] 1.3 million unique visits a month to its website. By

contrast, the Star Tribune's weekday circulation is about 300,000 and its website gets more

than 7 million unique visits a month." "Star Tribune makes deal to buy alt-weekly City

Pages" Evan Ramstad, Star Tribune (May 6, 2015), http://www.startribune.com/star-tribune-buys-city-pages/302763201/.

37.    In recent years, City Pages renewed its focus to hard news reporting. According to City Pages,  Minnesotans responded to its new format and "[i]n the most recent ABC Media Audit, City Pages added 70,000 readers and increased its market share to 27 percent of the 2.85 million people who call the Twin Cities home." http://www.citypages.com/about (last visited Mar. 22, 2020).

38.    City Pages publishes advertisements that are sexual in nature, including but not limited to, advertisements that support sex oriented businesses.

**B.    The diminutive Christian Action League has about 150 subscribers and a handful of activists.**

39.    The Christian Action League of Minnesota was first formed in 2010, becoming a 501(c)(3) non-profit organization in 2012. It is not a member organization but has 150 subscribers to which it will communicate to.

40.    The Christian Action League's focus has been primarily on pornography, including matters relating to sexual exploitation, and sexually-oriented businesses.

41.    Pornography, including matters relating to sexual exploitation and sexually-oriented businesses are matters of public concern. For instance, some consider pornography a public health crisis, including the sexual exploitation of women.  *See e.g.,* "Growing number of states call porn a public health crisis," Lindsay Whitehurst and Johnathan J. Cooper, (May 9, 2019);

(https://www.apnews.com/9c91cfd28a7b461b87948f36117a432e, last visited June

13, 2019); "Minneapolis adult entertainment venues face health department scrutiny,"

Emma Nelson (May 13, 2017) (http//www.startribune.com/minneapolis-adult-

entertainment-venues (last visited June 13, 2019)); "Sexual Exploitation," Concerned

Women for America (https://concernedwomen.org/issues/sexual-exploitation/ (last

visited June 13, 2019)).

42.    The Christian Action League's monthly publication, "The Beacon,"

reflects the underlying mission as: "Exposing the Harms of Our Sexually Exploitative

Culture." Redding publishes "The Beacon." **Exhibit 1.**

43.    The Christian Action League, through Redding, forwards to its

subscribers a monthly "newsletter" update on various topics and campaigns it and

other similar organizations are engaged in regarding pornography, sexual exploitation,

or sexually-oriented business issues. For instance, the Christian Action League will

encourage subscribers to visit the National Center on Sexual Exploitation and follow

that organizations actions and action alerts. **Exhibit 1.**

44.    In addition, the Christian Action League, through Redding, sends action

alerts every Wednesday, to encourage its subscribers—a subgroup of the whole who

have chosen to receive special Christian Action League emails—to take action.

**II.    Communications seek to educate, protest, and persuade changes in corporate policy regarding matters of public concern by divesting their City Pages advertising.**

45.    The Christian Action League's actions could be in the form of letters to the editor, letters, or other methods of communication to the business entities. For example, communications would be sent to companies or other businesses asking them to reconsider placing their ads in newspapers that carry other advertisements relating to pornography and, hence, support sexual exploitation or even sexually-oriented businesses. One such paper is the Star Tribune's "City Pages."

46.    The purpose of the Christian Action League's communications is to protest the actions of those businesses by educating them and through passive persuasion, ask that they forgo the placement of their City Pages ads. Part of the rationale includes what the League, its agents, and Redding's believe: the advertising moneys spent on City Pages ads, in turn, support a newspaper policy to accept ads from an industry regarding matters of public concern—pornography, sexual exploitation and sexually-oriented businesses. *E.g.* **Exhibit 13.**

47.    It is the belief of the Christian Action League, its agents, and Redding that its communications speak to issues of political, moral, and ethical importance in today's society; pornography, sexual exploitation, and sexually-oriented businesses.

48.    Thus, the underlying political protest of the Christian Action League is to explain to those businesses advertising within the City Pages, that whether directly or indirectly, those businesses are monetarily providing support to the matters of

14

public concern relating to pornography, sexual exploitation and sexually-oriented businesses. Through the League's protests to businesses to boycott advertising with the City Pages, the Christian Action League seeks to change the paper's advertising policy, much like the Star Tribune's earlier refusal to place ads supporting similar sexually-oriented businesses as found in the City Pages.

49.     In essence, the Christian Action League sought to encourage an advertising boycott of the City Pages.

50.     And, in so doing, the Christian Action League sought to influence businesses in passive speech activities to encourage them to boycott their respective monetary support—a complete divesture of interests—by changing their respective advertising policies within the City Pages by requesting them to "Stop Advertising in City Pages." **Exhibit 2.**

51.     The Christian Action League's advertising protest efforts is nothing "new" or unfamiliar to City Pages. For instance, in 2012, an advocacy website unrelated to the League, "gently elbowed" advertisers to pressure City Pages to stop publishing adult ads via "Backpage, which ha[d] been linked to underage prostitution by watchdog groups and law enforcement in the Twin Cities and across the country. Sounds like Minnesota Nice for 'boycott.'" "New Pressure mounts on City Pages to stop adult ads." The Star Tribune article stated that "at least one advertiser, the Hennepin County Bar Association, has been swayed" and did not renew its advertising contract with City Pages. **Exhibit 14.**

52.     As the Star Tribune article stated, the leader of the advocacy group, William Hayes, "isn't subtle about his position that anyone associated with Village Voice Media [the then City Pages owner] is complicit [with child trafficking], calling the company's top editors 'morally corrupt' and City Pages editor Kevin Hoffman a 'heretofore…hidden player in the child trafficking ad business.'" *Id.*

53.     Likewise, the Christian Action League would also encourage subscribers to write to businesses that distribute the "City Pages" because of the type of ads the newspaper carries and continues to carry.

54.     As a further example of the Christian Action League's core political speech activities, recently, in the spring of 2019, subscribers were asked to write to the St. Anthony Main Theatre in Minneapolis, to protest the holding of the amateur pornography film festival held at the theatre. And some did so.

**III.    The Christian Action League's business protests to divest City Pages advertising were not only successful but, little different than protests conducted against apartheid.**

55.     Since 2010, the Christian Action League's passive protest against pornography and suggested boycott through the divestment of advertising dollars by changing corporate advertising policies to those who advertised in the City Pages has been successful.

56.     Businesses contacted were thankful after learning about City Pages advertising related to pornography and sexual exploitation and changed their course of doing business with the newspaper:  They no longer advertise with the newspaper.

57.     In a communication from Hans Spitzer of Source Comics and Games, he wrote:

> Greetings.  I received a post card from your organization, and the topics from the websites provided was very informative.  I appreciate the fight to stop human trafficking, and it is one I agree with….While it is hard to know the connection between any two things in the world, it is nice to be aware of how our business (sic) perceived in the broader community….I thank you for your time and consideration….**Exhibit 4.**

58.     In a communication from Barb Gardiner, owner of Hen House Eatery, she wrote:

> Ann
> Thank you for the info, you have a valid point.  We did not know that about City Pages, and decided will not have it in our restaurant….**Exhibit 5.**

59.     In a communication from Mike Pearo of Hilltop Camper and RV, he wrote:

> Thank you for contacting us at Hilltop Camper and RV.  I appreciate you letting us know about our employment ad in the City Pages.  This was a free listing we received (with others) from some online advertising with Star Tribune.  I was not aware of the content of this paper and the ad will no longer be running in this paper.
>
> Thank you again and have a great day. **Exhibit 6.**

## A. Corporate social responsibility plays a role in seeking social changes desired by the people.

60.     The Christian Action League, its agents, and Redding are of the opinion and belief that non-profits and governmental organizations are and should be held to corporate social responsibility standards. By whatever name, interests of organizations cannot long be at odds with mutual interest and common good of society.

61.     The Christian Action League, its agents, and Redding agree with the concept that corporate social responsibility means "that a company takes steps to ensure there are positive social and environmental effects associated with the way the business operates. Businesses that engage in active [corporate social responsibility] efforts take stock of the way they operate in the world to incorporate addressing cultural and social issues, with the aim of benefiting both in the process." https://onlinemasters.ohio.edu/blog/why-corporate-social-responsibility-matters-in-todays-society/ (last visited Mar. 23, 2020).

62.     While there may be disagreement regarding what is the common good of society and the role of corporations in the interchange between beliefs within the marketplace of ideas, the Christian Action League, its agents, and Redding believe issues of pornography, sexual exploitation, and sexually-oriented businesses involve questions of political, moral, and ethical importance in today's society.

### B. Protest divestment and apartheid.

63.     In encouraging a City Pages boycott of advertising through the entities doing advertising business with the newspaper, the Christian Action League, its agents, and Redding engaged in protest divestment as part of and through their political speech activities.

64.     An example of how the act of protest divestment can affect social change is seen in the anti-apartheid movement that sought to influence the South African government in lieu of other traditional ways of protest such as picketing.

65.      Protest divestment is a form of dissent in which stockholders intentionally sell their assets, that is stock, from a corporation to enact social change. By selling off stocks, protesters hoped to influence corporations against performing some aspect of their business.  "Divestment and the End of Apartheid," https://www.investopedia.com/articles/economics/08/protest-divestment-south-africa.asp.

66.     As an example, during the anti-apartheid protests in the 1980s and 1990s, college students pressured universities to divest stocks of companies doing business in South Africa, a government that support apartheid policies. University endowment funds, as an investment tool, purchased stock of corporations.  When students learned that these same corporations did business in South Africa, the students would protest against the college administration to have it divest the college's stock in that particular company.

67.     The protest divestment strategy did not happen overnight but, over a period of time the protest movement became successful.  By 1988, approximately 155 colleges participated in one degree or another to divest their assets from companies doing business in South Africa. *Id.*

68.     Likewise, from 1985 to 1990, over 200 U.S. companies cut their financial ties with South Africa resulting in a loss of over $1 billion in direct investment. *Id.*

69.     South Africa was "ravaged by capital flight as businesses, investors, and money left the country." *Id.*  The protest divestment movement was not the only reason apartheid ended, but was a major contributing factor. *Id.*

**C. Protest divestment and pornography.**

70.     The Christian Action League's protest was similar to the protest divestment movement.  As explained, communications are a campaign with the companies, corporations, or entities doing business with the City Pages through advertising and hence, providing income to the newspaper.

71.     Part of the business of City Pages is to accept and publish advertisements that the League, its agents, and Redding believe are related to either pornography, sexual exploitation, or sexually-oriented businesses. **Exhibits 7, 8, and 9.**

72.     To encourage a boycott of City Pages advertising is to suggest the divestment of advertising moneys.  The Christian Action League and Redding seek to have advertisers stop advertising in City Pages until City Pages changes it policies in

accepting advertisements promoting pornography, sexual exploitation, or sexually-oriented businesses.

73.     The Christian Action League, its agents, and Redding have been successful with some businesses; but, news ads for new businesses continue to appear.

74.     The Christian Action League's protest is not over because the City Pages has not changed its advertising policies.

**IV.   R. Leigh Frost, Ltd. chose to advertise in the City Pages which had adult advertisements related to sexually-oriented businesses providing the public with the firm's street and email address.**

**A. The Christian Action League communicated with the Frost Law Firm requesting that it divest its City Pages advertising.**

75.     In March 2019, the Christian Action League continued with its protest against pornography, sexual exploitation, and sexually-oriented businesses in the same manner as it had done for years.

76.     Redding, in March 2019, noted a new corporate City Pages advertisement from the law firm R. Leigh Frost, Ltd.

77.     According to the Minnesota Secretary of State's Office, records reveal that R. Leigh Frost, Ltd (the "Frost Law Firm") is a public limited liability company organized under Minnesota law.

78.     The Frost Law Firm, through its agent or agents, decided to advertise in the City Pages on its own accord. The advertisement provided the law firm's street address—225 South 6th Street, Suite 1775, Minneapolis, Minnesota, 55402—and the

firm's website address—www.rleighfrostlaw.com—within the advertisement itself as an invitation to the public. **Exhibit 10.** From the website address, a person could obtain an email address for the Frost Law Firm—info@rleighfrostlaw.com.

79.     The Frost Law Firm paid moneys to the City Pages for the law firm's advertisement in the physical newspaper and the City Pages online version.

80.     When R. Leigh Frost, Ltd. decided to advertise with City Pages both in the paper and the online version, as the Christian Action League president, Redding sent an action alert to a sub-group of up to six Christian Action League subscribers encouraging them to write to R. Leigh Frost, Ltd.

81.     The Christian Action League had previously prepared postcards that subscribers could forward to business entities that immediately identified the issue and suggested boycott by suggesting the entities not advertise in the City Pages—the League's campaign of protest divestment of advertising moneys.

82.     Ann Redding sent one post-card to the law firm's address, publically provided in its ad, and wrote: "Porn tears families apart. City Pages promotes strip clubs and porn. As a woman, are you ok with that?" **Exhibit 11 (Aff. Attach. to Ex. B)** Leigh Frost, the law firm's presumed principal, is a woman.

83.     The postcard on the front side stated, "Don't Blindly Support Sexual Exploitation" with a quote from a woman, Elizabeth Smart who had been kidnapped, raped, and tortured for nine months at the age of 14 to which she is quoted: "All I know is that pornography made my living hell…worse" as the postcard depicted:



**Exhibit 2.**

84.     The back of the same card reads, "As a concerned citizen, I ask that you please: Stop Advertising in City Pages; Did you know your fellow advertisers are strip clubs, porn store and phone sex ads?" as the postcard depicted:



**Exhibit 2.**

85.     Christian Action League subscriber Kathleen Abel wrote an email to the

Frost Law Firm:

> Hello!
>
> I'm writing to encourage you to end your association with City
> Pages, a sleazy publication that caters to the sex industry in the
> Twin Cities.  City Pages regularly carries ads for phone sex, strip
> clubs, etc.  Do you really   want to be a part of this?
>
> Thank you for reading this.

**Exhibit 11 (Aff. Attach. Ex. C).**

86.     The Frost Law firm received at least two other postcards. *E.g.* **Exhibit**

**11 (Aff. Attach. Ex. D).**

87.     The quotes and information depicted in the postcard are derived from at

least one video interview of Elizabeth Smart and other written testimonials from the

National Center on Sexual Exploitation. *See* www.endsexualexploitation.org.

88.     Elizabeth Smart was kidnapped in Utah and held against her will by a

husband and wife couple. During her nine month ordeal, being repeatedly raped and

tortured was her reality. *Id.*

89.     In Smart interviews, she described how her male captor would view

pornography before he would rape her. Smart described it as her "living hell." *Id.*

90.    On March 20, 2019, Leigh Frost, of the Frost Law Firm, wrote to the Christian Action League requesting it not to contact her again. Frost stated that she found the postcard "misinformed and offensive." **Exhibit 11 (Aff. Attach. Ex. A).**

**B.    No threats were made to either the Frost Law Firm or Leigh Frost.**

91.    No threat of picketing was made against the Frost Law Firm.

92.    No threat of picketing was made against Leigh Frost at the firm's business address or at her residence. Neither the Christian Action League nor Redding knew her home address.

93.    The communications sent to the Frost Law Firm did not contain sensitive information about either the firm or Leigh Frost. Moreover, nothing was sent to Leigh Frost's family, friends, or clients.

94.    The communications were not sent to Leigh Frost's residence.

95.    None of the communications threatened either the Frost Law Firm or Leigh Frost.

96.    None of the communications threatened the security of either the Frost Law Firm or Leigh Frost.

97.    The Christian Action League, its agents, nor Redding invaded the Frost Law Firm or Leigh Frost's personal space.

**C.  Nevertheless, Leigh Frost obtains a harassment order from the district court.**

98.     Nevertheless, days later, on March 28, 2019, Leigh Frost filed an ex parte petition for harassment under Minnesota Statutes § 609.748 on behalf of herself personally, and the Law Firm. **Exhibit 11.**

99.     The following day, the Hennepin County district court issued a harassment order against the Christian Action League and its agents. **Exhibit 12.**

100.    The harassment order stated that the Christian Action League and its agents were not to "harass" Leigh Frost and the Law Firm, have no direct or indirect contact with them of any kind, and to "stay away from the Petitioner's job site at 225 South Sixth Street, Suite 1775, Minneapolis, Minnesota 55402." *Id.*

101.    The harassment order caused Redding, the Christian Action League and its agents to stop their communications with the Frost Law Firm regarding advertising in the City Pages.

102.    The harassment order caused Redding, the Christian Action League and its agents to stop their communications with all other businesses to stop advertising in the City Pages.  Redding, the Christian Action League and its agents did not want any more harassment restraining orders—one was enough.

### D. The communications of protest to other businesses passively requested the redirection or divestment of City Pages advertising.

103.    When new businesses advertised in the City Pages, the Christian Action League, its agents, or Redding, would protest to those businesses. It was the Christian Action League, its agents, and Redding's belief that the advertisement dollars spent

directly or indirectly supported a City Pages policy to accept ads from sexually-oriented businesses.

104.    The communications sent to those businesses sought to educate them about the sexually-oriented business advertisements placed in the City Pages, and the effects of pornography, and in turn, what sexual exploitation does to people, particularly women.

105.    The communications of the Christian Action League and its agents passively requested that the businesses reconsider their advertising in City Pages and divest their advertisements from the City Pages.

106.    Businesses did communicate back to the Christian Action League through Redding, expressing appreciation for being educated about the sexually-oriented business advertisements in City Pages and volunteering to divest their City Pages advertisements and advertisement dollars.

107.    No threat of picketing by the Christian Action League, its agents or Redding was made against any business who advertised in the City Pages..

108.    None of the communications sent picketing by the Christian Action League, its agents or Redding to other businesses who advertised in the City Pages threatened the security of either the business, its owner, or its employees.

109.    The Christian Action League, its agents, and Redding never threatened businesses who advertised in the City Pages by stating that Christian Action League,

its agents, and Redding would invade the business's owner or its employees' personal space.

110.    No communications of the Christian Action League, its agents, or Redding sent to businesses who advertised in the City Pages contained sensitive or confidential information about either the business or business owner. Moreover, nothing was sent to the business owner's family, friends, clients, or customers.

111.    In this case, through postcards and emails, the Christian Action League, its agents, or Redding sought to inform Frost and the Frost Law Firm that the City Pages ads they chose to place were directly or indirectly supporting pornography. The same communications requested a change in business policies of advertising with City Pages—to divest its advertising from the paper.  Instead of considering the request, Frost ran to the courthouse for a harassment restraining order to curtail Christian Action League's political speech. The state court's harassment restraining order, first, stopped Christian Action League's political activities regarding Frost and the Frost Law Firm, and, second, has since chilled the Christian Action League, its agents, and Redding's political speech to other businesses advertising in City Pages because of fear of more harassment restraining orders and subsequent prosecution, conviction, incarceration and fines.

## Count I

I.  **Minnesota's harassment statute without an exception to protect core political speech allows for the restraining of *all* core political speech activities by threat of criminal prosecution—violating the First Amendment free speech clause.**

### A. The offending provision, § 609.748, subdivision 1 (a)(1) is unconstitutional on its face.

112.    The Plaintiffs, Christian Action League, its agents, and Redding, adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count I.

113.    The First Amendment of the United States Constitution protects the right to free speech:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or the press, or the right of the people peaceably to assemble, and to petition the Government for the redress of grievances.

114.    The First Amendment protects an individual's right to engage in core political speech activities.

115.    Likewise, under the Fourteenth Amendment of the United States Constitution, states are prohibited from making or enforcing laws abridging the rights of the people:

> No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States….

116.    Core political speech is the interchange of ideas for the bringing about of political and social changes desired by the people.

117.   Under 42 U.S.C. § 1983, the statute provisions provide persons a federal cause of action based on state violations of federal law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

118.   The Court has statutory authority under 28 U.S.C. § 2201 to issue declaratory judgments.

119.   Minnesota Statutes § 609.748, subdivision 1(a)(1) applies to any person who with respect to any other individual or entity engages in:

> a single incident of physical or sexual assault, a single incident of harassment under section 609.749, subdivision 2, clause (8), a single incident of nonconsensual dissemination of private sexual images under section 617.261, or repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, *regardless of the relationship between the actor and the intended target*….

Emphasis added.

120.   The statute § 609.748, subdivision 1(a)(1), provides no exception for core political speech activities.

121.    A law is overbroad and thus facially unconstitutional when a substantial number of its applications are unconstitutional judged in relation to the statute's plainly legitimate sweep.

122.    The Christian Action League, its agents, and Redding are planning to engage in the same activities as they have done so in the past to protest against businesses that advertise in the City Pages.

123.    Therefore, they will be subject to the harassment statute under Minnesota Statutes § 609.748, subdivision 1(a)(1) as they have previously experienced with the Frost Law Firm. The threat is real.  Their political activities subject them to the state court issuing a harassment restraining order.

124.    A penalty need not be criminal to chill speech; however, the state court's harassment restraining orders under Minnesota Statutes § 609.748, subdivision 1(a)(1), come with criminal enforcement, possible convictions, possible incarcerations and possible fines.

125.     The Christian Action League, its agents, and Redding were subject to a harassment order and district court proceedings, requiring the expenditure of funds as volunteers and as a 501(c)(3) organization none of whom could financially afford legal representation, but could not afford going forward without one.

126.    Finally, the threatened application of Minnesota Statutes § 609.748, subdivision 1(a)(1) to Plaintiffs, without an exception for political speech activities,

has forced them to refrain from the expressive activity they believed is protected under the First Amendment.

### 1. Section 609.748, subdivision 1(a)(1) provides for no exceptions to protect political speech activities.

127.    The Christian Action League, its agents, and Redding are genuinely fearful of future harassment restraining orders and subsequent threat of criminal prosecution under Minnesota Statutes § 609.748, subdivision 1(a)(1) because of their political activities.

128.    The Christian Action League, its agents, and Redding contend that the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities and, thus, is unconstitutional on its face.

129.    Although the statutory provision may address categories of speech fully outside the protection of the First Amendment, and constitutionally subject to a harassment order, without the exception for core political speech, the statute suppresses core political speech in all respects and in all situations as "unwanted acts" (such as mail, postcards, or email) or "words" (such as pictures or comments) used to educate or persuade others on matters of public concern.

130.    Although the statutory provision may address categories of speech fully outside the protection of the First Amendment, and constitutionally subject to a harassment order, without the exception for core political speech, the statute suppresses core political speech without satisfying strict scrutiny. The statutory provision is not narrowly tailored to meet a compelling state interest. There is no reason an exception cannot be expressed in the offending statute to protect legitimate core political speech activities.

### 2. Unlike § 609.748, subdivision 1(a)(1) which provides for no exceptions to protect political speech activities, other state and federal laws provide exceptions to protect core political speech activities.

131.    Other federal and state statutes regulating speech make exceptions to protect core political speech activities.

132.    Most significantly, Minnesota Statutes § 609.749, a criminal statute governing harassment and stalking—similar topics addressed by § 609.748, subdivision 1(a)(1) contested in this case—has an express exception to protect core political speech activities:

> Conduct is not a crime under this section if it is performed under terms of a valid license, to ensure compliance with a court order, or to carry out a specific lawful commercial purpose or employment duty, is authorized or required by a valid contract, or is authorized, required, or protected by state, federal, or tribal law or the state, federal, or tribal constitutions. Subdivision 2, clause (2), *does not impair the right of any individual or group to engage in speech protected by the federal, state, or tribal constitutions, or federal, state, or tribal law, including peaceful and lawful handbilling and picketing.*

§ 609.749, subd. 7 (emphasis added).

133.    Federal statutes, such as the Hatch Act, 5 U.S.C. § 1502, curtailing federal employee political activities, also express exceptions to avoid chilling protected First Amendment rights:

> All State or local officers or employees are free to engage in political activity to the widest extent consistent with the restrictions imposed by law and this part. *A State or local officer or employee may participate in all political activity not specifically restricted by law and this part, including candidacy for office in a nonpartisan election and candidacy for political party office.*

5 C.F.R. § 151.111 (emphasis added).

134.    Minnesota Statutes § 609.748, subdivision 1(a)(1) in the context of the provision, "regardless of the relationship between the actor and the intended target…" has no similar exception to avoid chilling, deterring, or banning core political speech activities.

135.    The Christian Action League, its agents, and Redding believe and are of the opinion that speech cannot be restricted simply because it is upsetting or annoys others, or arouses contempt in others.

136.    The Christian Action League, its agents, and Redding believe and are of the opinion that they engaged and will continue to engage in core political speech activities.

137.    The Christian Action League, its agents, and Redding believe and are of the opinion that core political speech includes the interchange of ideas to bring about political and social changes desired by the people.

138.    The Christian Action League, its agents, and Redding, either individually or collectively when engaging in core political speech activities, have pursued political, economic, social, educational, religious, and cultural ends as it relates to their underlying beliefs and opinions regarding issues of public concern, namely, pornography, sexual exploitation, and sexually-oriented businesses.

139.    The Christian Action League, its agents, and Redding believe and are of the opinion that pornography, sexual exploitation, and sexually-oriented businesses are issues of political, moral, and ethical importance in today's society and, hence, matters of public concern.

140.    The City Pages sexually oriented advertisements, in the opinions and beliefs of the Christian Action League, its agents, and Redding, implicitly support, endorse, encourage interest in, or invite others to economically support pornography and matters relating to sexual exploitation.

141.    The Christian Action League has publically voiced its opposition to the City Pages regarding the newspaper's support of and continued refusal to stop accepting advertisements from sexually-oriented businesses. It is the Christian Action League's opinion that City Pages is avoiding corporate social responsibility by

ignoring the effect of the sexually-oriented business advertisements on society, by ignoring victims of pornography and by ignoring sexual exploitation.

142.    When other non-sexually-oriented businesses place advertisements in the City Pages, it is the Christian Action League's, its agents, and Redding's opinion and belief that those advertisements and advertising dollars are misplaced.

143.    The Christian Action League's, its agents, and Redding object to businesses advertising in the City Pages as abridging their respective corporate social responsibilities and protest against those businesses for doing so through written communications.

### 3.  Communications sent to businesses advertising in the City Pages included postcards and emails.

144.    The Christian Action League, its agents, and Redding have sent to businesses advertising in the City Pages, for example, written communications on postcards, with personal pleas, to divest their advertising from the City Pages similar to what was forwarded to the business entity R. Leigh Frost, Ltd:



**Exhibit 2.**

145.    The postcard on the front side stated, "Don't Blindly Support Sexual Exploitation" with a quote from a woman, Elizabeth Smart who had been kidnapped, raped, and tortured for nine months at the age of 14 to which she is quoted: "All I know is that pornography made my living hell...worse:"

146.    The back of the same card reads, "As a concerned citizen, I ask that you please: Stop Advertising in City Pages; Did you know you fellow advertisers are strip clubs, porn store and phone sex ads?"



**Exhibit 2.**

147.    In some circumstances, communications to businesses were made

through emails. Online speech stands on the same footing as any other form of

speech. The Christian Action League, its agents, and Redding believe and are of the

opinion that sending letters, electronic communications, or packages (physically or

electronically) to inform, educate and persuade others lies at the heart of our

democracy.

> **4.  A postcard which can be thrown out or an email that
> can be deleted is not constitutionally burdensome
> since the government cannot prohibit speech to a
> captive audience to avoid objectionable speech.**

148.    The phrase "regardless of the relationship between the actor and the

intended target…" in the context of "repeated incidents of intrusive or unwanted acts,

words, or gestures that have a substantial adverse effect or are intended to have a

substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities under Minnesota Statutes§ 609.748, subdivision 1(a)(1), and hence, regulates primarily expressive conduct—the sending of letters, postcards and emails.

149. In the context of Minnesota Statutes§ 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and the intended target...," without an exception for core political speech, the government cannot prohibit speech unless the "captive" audience cannot avoid objectionable speech. If the "captive" audience finds letters, postcards and emails objectionable, the business, its owner, or employees, may effectively avoid further so-called bombardment of their sensibilities simply by averting their eyes. There is nothing to stop the business from taking a short walk from the mail box to the trash can to deposit the unwanted letter or postcard. There is nothing to stop the business from re-positioning the computer mouse to delete the unwanted email.

150. Discarding unwanted political mailings or deleting unwanted political emails is hardly a burden for a business.  It is the opinion and belief of the Christian Action League, its agents, and Redding that such a burden is an acceptable burden under the First Amendment.

151. The phrase "regardless of the relationship between the actor and the intended target..." in the context of Minnesota Statutes § 609.748, subdivision 1(a)(1), proscribes speech or expressive conduct simply because it might disturb or arouse

resentment in others; thus, it chills speech, including provocative and challenging speech, in countless ways.

152.    The Christian Action League, its agents, and Redding believe that while their pre-prepared postcards may be upsetting to some and arouse contempt in others, it is protected core political speech.

153.    The Christian Action League, its agents, and Redding are of the opinion and belief that the issues expressed in their communications fit squarely within the rubric of the First Amendment because they contribute to the "marketplace of ideas," to educate, and urge others to action. They believe their communications did so.

154.    Moreover, the Christian Action League, its agents, and Redding are of the opinion and belief that their communications constitute political speech that while others may find theirs political communications offensive and uncomfortable, the political communications are precisely the type of speech protected under the First Amendment because it serves a higher purpose when it induces a condition of unrest or stirs the emotions of people. They believe their communications did so.

155.    None of the Christian Action League's, its agents', and Redding's communications to businesses advertising in the City Pages advocated imminent lawlessness or lawless action of any kind.

156.    None of the Christian Action League's, its agents', and Redding's communications to businesses advertising in the City Pages would provoke the

average person to democratic structural change of any kind (e.g., revolution, devolution, home rule) which would result in or cause a general breach of the peace.

157.    None of the Christian Action League's, its agents', and Redding's communications to businesses advertising in the City Pages revealed a serious expression of an intent to commit an act of unlawful violence against the business or any individual or group of individuals associated with the business or to any other entity.

158.    The Christian Action League, its agents, and Redding are of the opinion and belief that expressions of opinion and peaceful means of protest are protected from causes of actions alleging interference with business.

159.    The Christian Action League, its agents, and Redding are of the opinion and belief that any claim that their political communications with businesses who advertise in the City Pages were intended to exercise a coercive impact on those businesses' advertising practices does not remove the political communications from the reach of the First Amendment.

## B. Section 609.748, subdivision 1(a)(1) is unconstitutionally overbroad.

160.    Section 609.748, subdivision 1(a)(1), without an exception to protect core political speech, is unconstitutionally overbroad because a  substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep.

161.    Despite the intent of § 609.748, subdivision 1(a)(1) to address non-protected speech, without an exception to protect core political speech, the statute is unconstitutionally overbroad because it would allow any city, county, state, or federal elected official to obtain a harassment order against any person who engaged in core political speech activities targeted against that elected official.

162.    Engaging in core political speech activities targeted at elected officials is protected free speech under the First Amendment.

163.    Despite the intent of § 609.748, subdivision 1(a)(1) to address non-protected speech, without an exception to protect core political speech, the statute is unconstitutionally overbroad because it would allow any city, county, state, or federal department, agency or agency official or department non-elected official or employee to obtain a harassment order against any person who engaged in core political speech activities targeted at that governmental official.

164.    Despite the intent of § 609.748, subdivision 1(a)(1) to address non-protected speech, without an exception to protect core political speech, the statute is unconstitutionally overbroad because it authorizes any organization or corporate

entity, profit or non-profit, who engage in matters of public concern, such as the American Civil Liberties Union, the Institute for Justice, or any corporate entity engaged in lobbying township, city, school district, county, state, or federal departments, agencies or officials, to obtain a harassment order against any person who engaged in political speech criticizing that entity or the entity's activities.

165.    Despite the intent of § 609.748, subdivision 1(a)(1) to address non-protected speech, without an exception to protect core political speech, the statute is unconstitutionally overbroad because it would allow any controversial religious or non-elected political leader, such as a person who has retired from their position or seeking a position, to obtain a harassment order against any person who engaged in core political speech activities targeted at that leader.

166.    Despite the intent of § 609.748, subdivision 1(a)(1) to address non-protected speech, without an exception to protect core political speech, the statute sweeps in a whole spectrum of constitutionally protected core political speech activity.

167.    Because § 609.748, subdivision 1(a)(1) provides no exception for core political speech activities, the statute is not, under the First Amendment, sufficiently narrow to support its constitutional applications against non-protected speech activities. Therefore, the statute is unconstitutional.

### C. Section 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional as applied.

168.   The phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities such as the political speech activities that the Christian Action League, its agents, and Redding engage in.

169.   There is nothing in the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," without an exception for core political activities, that gave or gives the Christian Action League, its agents, or Redding fair notice that that their conduct is proscribed.

170.   As detailed above, the Christian Action League, its agents, and Redding were subject to a harassment order and possible criminal prosecution due to the Frost Law Firm  obtaining a state court order under Minnesota Statutes§ 609.748, subdivision 1(a)(1). Because the provision makes no exception for core political speech activities, the state court issued the harassment restraining order against the Plaintiffs based on the Plaintiffs' political postcards and political emails—six in

total—when those political communications are constitutionally protected free speech under the First Amendment.

171.    Under the First Amendment, the government cannot, under Minnesota Statutes § 609.748, subdivision 1(a)(1), shut off the flow of political mailings and emails to protect those recipients who might potentially be offended by the political message being conveyed.

172.    As detailed above, the Christian Action League, its agents, and Redding have been subject to a harassment order under Minnesota Statutes § 609.748, subdivision 1(a)(1). Once the Frost Law Firm order was issued, the Christian Action League, its agents, and Redding curtailed their core political speech activities and ceased protesting against businesses who advertised in the City Pages.

173.    Although the harassment order issue has now been resolved, because of their experience with the Frost Law Firm harassment order, the Christian Action League, its agents, and Redding have since stopped their core political speech activities and ceased protesting against businesses who advertised in the City Pages. They have had to self-censor their otherwise protected speech activities to avoid more harassment restraining orders and possible criminal prosecutions, convictions, incarcerations and fines.

174.    Because of the harassment order experienced with the Frost Law Firm and fear of criminal prosecution, the Christian Action League, its agents, and Redding

stopped their core political speech activities and ceased protesting against businesses who advertised or distributed the City Pages.

175.    And, although the Christian Action League, its agents, Redding in the state court proceeding reached an agreement with the Frost Law Firm regarding the dismissal of the earlier harassment restraining order, the Plaintiffs remain fearful of future harassment complaints by business they contact under Minnesota Statutes § 609.748, subdivision 1(a)(1) and fear subsequent criminal prosecution.

176.    Threats, complaints, proceedings and penalties associated with Minnesota Statutes § 609.748, subdivision 1(a)(1) for exercising core political speech acts, unconstitutionally bans, deters, and chills the Christian Action League, its agents, and Redding's—and others— from engaging in core political speech activities.

177.    Because the Christian Action League, its agents, and Redding engaged in and desire to continue to engage in political speech activities to protest against businesses who advertise in the City Pages, and because these political speech activities are banned by § 609.478, subdivision 1(a)(1), the statute is unconstitutional as applied to the Plaintiffs.

### D. Criminal prosecution remains a legitimate threat.

178.    Prosecution under Minnesota Statutes § 609.748, subdivision 1(a)(1) is a realistic danger that significantly compromises the ability of the Christian Action League, its agents, and Redding—and others—to engage in core political speech activities.

179.    None of the activities by the Christian Action League, its agents, and Redding involve non-First-Amendment-protected speech.

180.    Under Minnesota Statutes § 609.748, subdivision 6, the Christian Action League, its agents, or Redding are subject to criminal prosecution when a harassment order is in place which in turn chills, deters, or bans them—and others—from core political speech activities:

> (e) A person who violates a restraining order issued under this section is subject to the penalties provided in paragraphs (b) to (d).
>
> (f) Except as otherwise provided in paragraphs (c) and (d), when a temporary restraining order or a restraining order is granted under this section and the respondent knows of the order, violation of the order is a misdemeanor.
>
> (g) A person is guilty of a gross misdemeanor who violates the order within ten years of a previous qualified domestic violence-related offense conviction or adjudication of delinquency.
>
> (h) A person is guilty of a felony and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both, if the person violates the order.

181.    Despite the Christian Action League, its agents, and Redding having settled with the Frost Law Firm regarding the previously issued harassment order, they remain fearful of future harassment complaints under Minnesota Statutes §

609.748, subdivision 1(a)(1) and fear subsequent criminal prosecution. As a result, they have curtailed their core political speech activities.

182.    The phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect political speech activities, has chilled, restricted, or banned the Christian Action League's, its agents, and Redding's core political speech activities.

183.    The potential threats, complaints, proceedings, orders, and penalties under the phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) unconstitutionally bans, deters, and chills the Christian Action League, its agents, Redding—and others—from engaging in constitutionally-protected core political speech activities under the First Amendment.

184.    The phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) is subject to strict scrutiny.

185.    The phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) fails strict scrutiny because it is not narrowly tailored to meet a compelling state interest.

186.    The phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) is,

unconstitutionally, not narrowly tailored to meet a compelling state interest because it does not make an exception for First-Amendment-protected political speech activities--thereby subjecting persons engaging in First-Amendment-protected political speech activities to harassment restraining orders and subsequent criminal prosecutions.

### E. The County Attorney's role in criminal prosecutions under Minnesota Statutes § 609.748, subdivision 1(a)(1).

187.   Mike Freeman, the Hennepin County Attorney, is the enforcer and prosecutor of criminal laws in the name of the State of Minnesota in Hennepin County. Therefore, having the authority to prosecute state criminal laws, Freeman and his office act as state officials when they prosecute violations of harassment orders issued under Minnesota Statutes § 609.748, subdivision 1(a)(1).

188.   As the County Attorney for Hennepin County, Freeman's office is responsible for the criminal prosecution of persons who violate harassment orders under Minnesota Statutes § 609.748, subdivision 1(a)(1).

189.   Freeman and his office cannot claim that they will not criminally prosecute violations of harassment restraining orders issued under Minnesota Statutes § 609.748, subdivision 1(a)(1) because they are required to do so.

190.   Any claimed self-restraint by Freeman and his office in criminally prosecuting under Minnesota Statutes § 609.748, subdivision 1(a)(1) does not

constitute a limiting construction of this statute which unconstitutionally bans core political speech activities.

### F. The relief requested should be granted because Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional.

191. The phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, and its continuing application bans, deters, or chills core political speech activities—which is a continuing violation of the First Amendment of the U.S. Constitution.

192. The offending statute, Minnesota Statutes § 609.748, subdivision 1(a)(1), with the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," because it makes no exception for core political speech activities, is unconstitutional.

### G. The relief requested should be granted because Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional.

193. The Christian Action League, its agents, and Redding seek prospective relief under 28 U.S.C. § 2201, the federal declaratory judgments act.

194.    Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional on its face.

195.    Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional as applied.

196.    This Court should declare the entire phrase found in Minnesota Statutes § 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and the intended target…," in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target…" is unconstitutional because there is no exception for core political speech activities.

197.    Christian Action League, its agents, and Redding request this Court to issue declaratory and permanent injunctive relief directing the Hennepin County to cease and prevent any further prosecution of any harassment restraining order issued under Minnesota Statutes § 609.748, regarding the exercise of core political speech activities as the phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) so states and presently allows such prosecutions.

198.    Because the First Amendment rights of the Christian Action League, its agents, and Redding under 42 U.S.C. § 1983 were and are violated, they are entitled to attorney fees, costs, and disbursements.

## Count II

**Minnesota's harassment statute § 609.748, subdivision 1(a)(1), without an exception for core political speech, is content-based and thus, unconstitutional under the First Amendment's Free Speech Clause.**

199.    The Plaintiffs, the Christian Action League, its agents, and Redding, adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count II.

200.    Core political speech activities are protected under the First Amendment's Free Speech Clause which applies to the states through the Fourteenth Amendment.

201.    In Minnesota Statutes§ 609.748, subdivision 1(a)(1), the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," sweeps in a whole spectrum of constitutionally protected core political speech activities.

202.    Under Minnesota Statutes § 609.748, subdivision 1(a)(1), the statutory prohibitions are enforced "regardless of the relationship between the actor and the intended target."

203.    Because there is no exception in Minnesota Statutes § 609.748, subdivision 1(a)(1), for protected political speech regarding the relationship between

the actor and intended target, combined with the phrases "unwanted acts" and "words," the statute is not content-neutral.

204.    For example, the Frost Law Firm, through R. Leigh Frost, found the communications received from the Christian Action League, its agents, and Redding as "misinformed and offensive."

205.    Even if Minnesota Statutes § 609.748, subdivision 1(a)(1) is an attempt to prohibit unprotected speech, it also targets speech based on its communicative content—applying to particular speech because of the topic discussed or the idea or message expressed as the Christian Action League, its agents, and Redding experienced with the Frost Law Firm's harassment restraining order obtained from the state court.

206.    Because there are no exceptions regarding the relationship between the actor and intended target, combined with the phrases "unwanted acts" and "words," the statute is content-based.

207.    Because the statutory provision at issue allows for no exception to the type of speech expressed to another, it prohibits persons to exercise core political speech.

208.    A content-based statute is subject to strict scrutiny and is unconstitutional unless the law is narrowly tailored to serve a compelling state interest.

209.    The phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts,

words, or gestures that have a substantial adverse effect or are intended to have a

substantial adverse effect on the safety, security, or privacy of another," makes no

exception for core political speech activities; so, therefore, under Minnesota Statutes§

609.748, subdivision 1(a)(1), therefore, harassment restraining orders can be issued for

core political speech activities if the targeted person is contacted through, for

example, mail or email, and finds the words expressed as "offensive" or

"misinformed." In short, the statute targets *all forms* of speech, including political

speech.

210.    The phrases "repeated…intrusive" and "unwanted" modifies "acts,"

"words," and "gestures" under § 609.748, subdivision 1(a)(1), without an exception to

protect political speech, is of itself are the restrictions of the content of the political

speech. For example, the Frost Law Firm obtained a harassment order of protected

speech activities—emails and postcards—because the firm found the speech

"misinformed" and "offensive.

211.    The phrases "repeated…intrusive" and "unwanted" as they modify

"acts," "words," and "gestures" under § 609.748, subdivision 1(a)(1), without an

exception to protect political speech, ban political speech activities to educate, to

advise, to encourage, to protest others which in some instances may be alarming or

disturbing to others.

212.    And, while the statute may have been intended to prohibit non-First-

Amendment-protected speech, it actually suppresses the expression of unpopular

political speech. Without the exception to protect core political speech activities, §

609.748, subdivision 1(a)(1), burdens substantially more speech than necessary to

achieve the state's presumed interests.

> **The relief requested should be granted because Minnesota
> Statutes § 609.748, subdivision 1(a)(1), without an exception
> for core political speech activities, is unconstitutional.**

213.    The Christian Action League, its agents, and Redding seek prospective

relief under 28 U.S.C. § 2201, the federal declaratory judgments act.

214.    Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception

for core political speech activities is unconstitutional since the statute is content-based

intended as applicable to *all* speech.

215.    This Court should declare the entire phrase found in Minnesota Statutes

§ 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and

the intended target…," in the context of "repeated incidents of intrusive or unwanted

acts, words, or gestures that have a substantial adverse effect or are intended to have a

substantial adverse effect on the safety, security, or privacy of another, regardless of

the relationship between the actor and the intended target…" is unconstitutional

because there is no exception for core political speech activities.

216.    The Christian Action League, its agents, and Redding request this Court

to issue declaratory and permanent injunctive relief directing the Hennepin County to

cease and prevent any further prosecution of any harassment restraining order issued

under Minnesota Statutes § 609.748, regarding the exercise of core political speech

activities as the phrase "regardless of the relationship between the actor and the intended target…" found under Minnesota Statutes § 609.748, subdivision 1(a)(1) is unconstitutional and presently allows such prosecutions.

217.    Because the First Amendment rights of the Christian Action League, its agents, and Redding under 42 U.S.C. § 1983 were and are violated, they are entitled to attorney fees, costs, and disbursements.

## Count III

**The harassment restraining orders issued under Minnesota's harassment statute, § 609.748, subdivision 1(a)(1), covering political speech activities, are unconstitutional prior restraints on protected political speech activities.**

218.    The Plaintiffs, the Christian Action League, its agents, and Redding, adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count III.

219.    Core political speech activities are protected under the First Amendment's Free Speech Clause which applies to the states through the Fourteenth Amendment.

220.    Under Minnesota Statutes§ 609.748, subdivision 1(a)(1), the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," by making no exception for core

political speech activities, sweeps in a whole spectrum of constitutionally-protected core political speech activities.

221.    Under Minnesota Statutes§ 609.748, subdivision 1(a)(1), without an exception to protect political speech activities, the statutory provision is enforced "regardless of the relationship between the actor and the intended target."

222.    The statute places unbridled discretion in the hands of the government to determine whether certain political speech will be allowed.

223.    The Christian Action League, its agents, and Redding had no notice and no understanding that Minnesota Statutes 609.648, subdivision 1(a)(1), could be used against them for the political speech activities of sending, for example, emails, postcards, or letters to educate, protest, or provide opinions and beliefs regarding pornography and sexual exploitation to businesses who advertise in the City Pages.

224.    Because Minnesota Statutes 609.648, subdivision 1(a)(1) has no exception for core political speech, the statute failed to provide the Christian Action League, its agents, and Redding notice of any standard or definition that political speech was prohibited to express through emails, postcards, or letters to educate, protest, or provide opinions and beliefs regarding pornography and sexual exploitation to businesses who advertise in the City Pages.

225.    With the lack of an exception for core political speech activities, the statute allows *any person* with unbridled discretion to obtain a harassment restraining order when they disagree with the views of the protestor or political advocate.

226.    Because there are no exceptions regarding the relationship between the actor and intended target, combined with the phrases "unwanted acts" and "words," the statute and any state court order issued thereunder is a prior restraint because it authorizes public officials—prosecutors, law enforcement officers and judges—to exercise unfettered discretion issuing and enforcing a specific ban against a specific person's political speech activities—a prior restraint.

227.    The threat of these prior restraints, with the accompanying civil and criminal prosecutorial consequences, will cause and has caused intimidation of the Christian Action League, its agents, and Redding to censor their own political speech activities.

228.    The statutory scheme of Minnesota Statutes§ 609.748 authorizes the issuance and enforcement of harassment restraining orders issued thereunder to be prior restraints on the exercise of protected expression.

229.    The Christian Action League, its agents, and Redding were subject to a harassment order under § 609.748, and although the Plaintiffs desired to continue their political speech activities, their political speech activities were curtailed by the specific harassment restraining order issued under § 609.748 applying to their future political speech activities—a prior restraint.

230.    In fear of more prior restraints, the Plaintiffs no longer protest other business entities advertising in City Pages or distributing City Pages.

231. In fear of more prior restraints, Redding no longer issues action alerts to Christian Action League activists to encourage them to exercise core political activities to educate, persuade, or request business entities to withdraw their advertising with the City Pages.

232. Because of their fear of more prior restraints, the Christian Action League, its agents, and Redding have had to self-censor their otherwise protected political speech activities.

233. The statute's harassment restraining orders place a prior restraint on the exercise of the people's protected political speech.

234. Under Minnesota Statutes§ 609.748, subdivision 1(a)(1), the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities, and because the threat of censorship exits, the harassment restraining orders issued under the statute are subject to strict scrutiny as prior restraints.

235. The state has no compelling state interest not to protect core political speech; yet, through § 609.748, subdivision 1(a)(1), and the harassment restraining orders issued thereunder, the government requires self-censorship of Plaintiffs' political speech activities.  Because of the threatened civil and criminal enforcement

under the statute, the Plaintiffs cannot engage in political speech activities previously exercised. They wish to continue exercising their political speech activities, but, for fear of civil and criminal prosecution, cannot.

236.     Under Minnesota Statutes§ 609.748, subdivision 1(a)(1), because the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities, any harassment restraining order issued under the statute covering political speech activities, cannot withstand strict scrutiny as a prior restraint.

**The relief requested should be granted because any harassment restraining order issued under Minnesota Statutes § 609.748, subdivision 1(a)(1) covering political speech activities is an unconstitutional prior restraint.**

237.     The Christian Action League, its agents, and Redding seek prospective relief under 28 U.S.C. § 2201, the federal declaratory judgments act.

238.     Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities is unconstitutional since any harassment restraining order issued under the statute covering political speech activities is an unconstitutional prior restraint.

239.     This Court should declare the entire phrase found in Minnesota Statutes § 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and

the intended target…," in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target…" is unconstitutional because there is no exception for core political speech activities.

240.    Christian Action League, its agents, and Redding request this Court to issue declaratory and permanent injunctive relief directing the Hennepin County to cease and prevent any further prosecution of any harassment order issued under Minnesota Statutes § 609.748, which covers political speech activities, because it is an unconstitutional prior restraint.

241.    Because the First Amendment rights of the Christian Action League, its agents, and Redding under 42 U.S.C. § 1983 were and are violated, they are entitled to attorney fees, costs, and disbursements.

## Claim IV

**Minnesota's harassment statute § 609.748, subdivision 1(a)(1), without an exception for core political speech, is unconstitutionally vague**

242.    The Plaintiffs, the Christian Action League, its agents, and Redding, adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count IV.

243.    Core political speech activities are protected under the First Amendment's Free Speech Clause which applies to the states through the Fourteenth Amendment.

244.    Vague regulations are impermissible under the Due Process Clause because they fail to provide adequate notice of prohibited conduct and they allow for arbitrary and discriminatory enforcement.

245.    Under Minnesota Statutes§ 609.748, subdivision 1(a)(1), the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities; therefore, it sweeps in a whole spectrum of constitutionally protected core political speech activities.

246.    Minnesota Statutes § 609.748, subdivision 1(a)(1) violates the Due Process Clause of the Fourteenth Amendment as unconstitutionally vague.

247.    A person exercising core political speech activities would not know from Minnesota Statutes § 609.748, subdivision 1(a)(1) that political speech activities are subject to harassment restraining orders if a person files a complaint under § 609.748.

248.    Minnesota Statutes§ 609.748, subdivision 1(a)(1), without an exception to protect political speech activities is vague and impermissible under the Due Process Clause because it fails to provide adequate notice of prohibited conduct and allows

for arbitrary and discriminatory enforcement. The phrase, "regardless of the relationship between the actor and the intended target," does not provide a person of ordinary intelligence with fair notice of what political speech activities will be prohibited.

249.    Under § 609.748, subdivision 1(a)(1), the phrase, "regardless of the relationship between the actor and the intended target," juxtaposed against the phrase "repeated…intrusive" and "unwanted" modifies "acts," "words," and "gestures," without an exception to protect political speech, provides no legally cognizable standard or definitive notice what restrictions on political speech activities exist.

250.    As detailed above, the Frost Law Firm obtained a harassment order against Plaintiffs for their postcards and emails advocating against pornography, sexual exploitation and sexually-oriented businesses.

251.    The Plaintiffs could not have possibly known from the text of § 609.748 that these political speech activities were prohibited or could be prohibited.

252.    Because § 609.748 does not provide the public of which political speech activities are permitted or which are prohibited, it is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

**The relief requested should be granted because Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutionally vague.**

253.    The Christian Action League, its agents, and Redding seek prospective relief under 28 U.S.C. § 2201, the federal declaratory judgments act.

254.    Minnesota Statutes § 609.748, subdivision 1(a)(1) without an exception for core political speech activities, is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

255.    This Court should declare the entire phrase found in Minnesota Statutes § 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and the intended target…," in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target…" is unconstitutional because there is no exception for core political speech activities.

256.    Christian Action League, its agents, and Redding request this Court to issue declaratory and permanent injunctive relief directing the Hennepin County to cease and prevent any further prosecution of any harassment order issued under Minnesota Statutes § 609.748, which covers political speech activities, because it is an unconstitutional prior restraint.

64

257.    Because the First Amendment rights of the Christian Action League, its agents, and Redding under 42 U.S.C. § 1983 were and are violated, they are entitled to attorney fees, costs, and disbursements.

## Claim V

**Minnesota's harassment statute § 609.748, subdivision 1(a)(1), without an exception for political speech activities, violates the First Amendment's right to association.**

258.    The Plaintiffs, the Christian Action League, its agents, and Redding, adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count V.

259.    Freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments.

260.    Political association is speech in and of itself because it allows a person to convey a message about some of his or her basic beliefs. The government may not infringe upon the right of association by interfering with the internal organization or affairs of a particular group.

261.    The Christian Action League, its agents, and Redding believe that the right to engage in activities protected by the First Amendment implies a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

262.    The Christian Action League, its agents, and Redding believe that the First Amendment protects their right not only to advocate their cause but also to select what they believe to be the most effective means for so doing.

263.    The Christian Action League, its agents, and Redding have sought to create an interactive means of communicating with others for political change on issues of public concern.

264.    The Christian Action League, its agents, and Redding have chosen to use different methods of communicating with businesses who advertise in the City Pages by postcards, letters, or emails, requesting a change in the business's advertising policies and expenditure of advertising moneys with the City Pages. The Plaintiffs have advocated for those businesses to divest their interests from City Pages. The Plaintiffs' associational efforts are directed to educate and change political, ideological, and other beliefs regarding pornography, sexual exploitation, and sexually-oriented businesses.

265.    The Christian Action League, its agents, and Redding seek to encourage other entities not to advertise with the City Pages or distribute City Pages until the City Pages ceases its acceptance of ads from sexually-oriented businesses that in the Plaintiffs' opinion and belief, directly or indirectly support pornography or sexual exploitation.

266.    Under Minnesota Statutes § 609.748, subdivision 1(a)(1), the phrase "regardless of the relationship between the actor and the intended target…" in the

context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another," makes no exception for core political speech activities.

267. Strict scrutiny is applicable when a statute severely burdens associational rights, meaning that it must be narrowly tailored and advance a compelling state interest.

268. As much as Minnesota Statutes § 609.748, subdivision 1(a)(1) may seek to criminalize non-protected speech, the failure of the statute to have an exception for protected speech is a restriction on First-Amendment-protected speech. § 609.748 goes beyond what is essential and encompasses *all* core political speech activities "'regardless of the relationship between the actor and the intended target...'"

269. Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, unconstitutionally interferes with the Plaintiffs' political speech activities.

270. Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, unconstitutionally interferes with the Christian Action League's, its agents', and Redding's associational activities. The Plaintiffs' associational activities have come to a halt; they have been forced to curtail, self-censor and cease their protest processes and political speech activities.

271.    Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, unconstitutionally bans the Christian Action League's business operations model and mode of operations.

272.    So long as Minnesota Statutes § 609.748, subdivision 1(a)(1) remains in place, without an exception to protect core political speech, the statute will continue to violate the associational rights of Christian Action League, its agents, and Redding because they will be unable to engage in their chosen form of political speech and associational activity.

**The relief requested should be granted because Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional.**

273.    The phrase "regardless of the relationship between the actor and the intended target…," found under Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, bans, deters, or chills core political speech activities—which is a continuing violation of the First Amendment and Fourteenth Amendment of the U.S. Constitution.

274.    The Christian Action League, its agents, or Redding assert that the offending statute, Minnesota Statutes § 609.748, subdivision 1(a)(1), with the phrase "regardless of the relationship between the actor and the intended target…" in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect

on the safety, security, or privacy of another," makes no exception for core political speech activities—which is unconstitutional.

275.    The Christian Action League, its agents, and Redding seek prospective relief under 28 U.S.C. § 2201, the federal declaratory judgments act.

276.    Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception for core political speech activities, is unconstitutional because it violates the right of association.

277.    This Court should declare the entire phrase found in Minnesota Statutes § 609.748, subdivision 1(a)(1), "regardless of the relationship between the actor and the intended target…," in the context of "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target…" is unconstitutional because there is no exception for core political speech activities.

278.    Christian Action League, its agents, and Redding request this Court to issue declaratory and permanent injunctive relief directing the Hennepin County to cease and prevent any further prosecution of any harassment order issued under Minnesota Statutes § 609.748, which covers political speech activities, because it is a violation of the constitutional rights of association under the First Amendment.

279.    Because the First Amendment rights of the Christian Action League, its agents, and Redding under 42 U.S.C. § 1983 were and are violated, they are entitled to attorney fees, costs, and disbursements.

## JURY TRIAL REQUESTED

280.    A jury trial is requested for contested facts or other issues as deemed necessary to be resolved by a jury.

## RELIEF REQUESTED

Therefore, the Plaintiffs, the Christian Action League of Minnesota and Ann Redding respectfully ask this Court to:

1.    Declare that Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, violates the Free Speech Clause of First Amendment of the U.S. Constitution and is therefore, unconstitutional on its face;

2.    Declare that Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, violates the Free Speech Clause of First Amendment of the U.S. Constitution and is therefore, unconstitutional as applied;

3.    Declare that Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, is unconstitutionally overbroad violating the First Amendment of the U.S. Constitution and is therefore, unconstitutional;

4.    Declare that Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, violates the right of association of the First Amendment of the U.S. Constitution and is therefore, unconstitutional;

5.      Declare that Minnesota Statutes § 609.748, subdivision 1(a)(1), without an exception to protect core political speech, violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution because it is unconstitutionally vague;

6.      Declare that any harassment restraining order issued under Minnesota Statutes § 609.748, subdivision 1(a)(1), covering political speech activities, violates the First Amendment of the U.S. Constitution because it is an unconstitutional prior restraint;

7.      Issue permanent injunctive relief against the Defendant from threatening or enforcing Minnesota Statutes § 609.748, subdivision 1(a)(1) in any criminal prosecutorial proceeding;

8.      Declare that the civil rights of the Plaintiffs Christian Action League and Ann Redding were violated under 42 U.S.C. § 1983;

9.      Award the Plaintiffs Christian Action League and Ann Redding all relief entitled to them under 42 U.S.C. § 1988, including attorney fees, costs, and disbursements; and

10.     All other relief under the law to the Plaintiffs Christian Action League and Ann Redding for which this Court deems just and proper.

Dated: May 4, 2020

       /s/Erick G. Kaardal         
Erick G. Kaardal, 229647
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Facsimile:  612-341-1076
Email: kaardal@mklaw.com
*Attorneys for Plaintiffs*