UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christian Action League of Minnesota and
Ann Redding,

    Plaintiffs,

v.

Mike Freeman, Hennepin County Attorney,
in his official capacity,

    Defendant.

Keith Ellison, Attorney General for the
State of Minnesota,

    Intervenor.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 20-1081 ADM/TNL

_____

Erick G. Kaardal, Esq., Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Kelly K. Pierce, Esq., and Christiana M. Martenson, Esq., Hennepin County Attorney's Office, Minneapolis, MN, on behalf of Defendant.

Elizabeth C. Kramer, Esq., and Cicely R. Miltich, Esq., Minnesota Attorney General's Office, St. Paul, MN, on behalf of Intervenor Minnesota Attorney General.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Hennepin County Attorney Mike Freeman's ("Freeman") Motion to Dismiss [Docket No. 10]. Plaintiffs Christian Action League of Minnesota ("CAL") and Ann Redding ("Redding") challenge the constitutionality of Minnesota Statute § 609.748, subd. 1(a)(1), an anti-harassment statute. Plaintiffs claim the statutory provision is unconstitutional under the First and Fourteenth Amendments, both facially and as applied to them. Plaintiffs have sued Freeman in his official capacity as the official responsible for prosecuting violations of Minn.

Stat. § 609.748. The Minnesota Attorney General has intervened for the purpose of defending the constitutionality of Minn. Stat. § 609.748, subd. 1(a)(1). See Notice Intervention [Docket No. 26]. For the reasons set forth below, Freeman's Motion is granted.

## II. BACKGROUND

### A. The Harassment Restraining Order Statute

Plaintiffs challenge subdivision 1(a)(1) of Minnesota's harassment restraining order statute, Minn. Stat. § 609.748 (the "HRO Statute"). The challenged provision defines "harassment" as including "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748 subd. (a)(1).

A victim of harassment may seek a harassment restraining order ("HRO") from the state district court. Id. § 609.748, subd. 2. If the court has a reasonable belief the respondent's behavior is harassment, the court may issue a temporary HRO ordering the respondent to stop harassing or have no contact with the petitioner. Id. § 609.748, subd. 4. If an HRO is issued, it must be served on the respondent, who may request a hearing to challenge the HRO. Id. After a hearing, the Court may issue an HRO to apply for up to two years. Id. § 609.748, subd. 5(b)(3).

Violation of an HRO is generally characterized as a misdemeanor or gross misdemeanor. See Id. § 609.748, subd. 6(b), (c). However, violation of an HRO may be a felony if the defendant violates the order:

> (1) within ten years of the first of two or more previous qualified domestic violence-related offense convictions or adjudications of delinquency;

2

>    (2) because of the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363A.03, age, or national origin;
>
>    (3) by falsely impersonating another;
>
>    (4) while possessing a dangerous weapon;
>
>    (5) with an intent to influence or otherwise tamper with a juror or a judicial proceeding or with intent to retaliate against a judicial officer, as defined in section 609.415, or a prosecutor, defense attorney, or officer of the court, because of that person's performance of official duties in connection with a judicial proceeding; or
>
>    (6) against a victim under the age of 18, if the respondent is more than 36 months older than the victim.

Id. § 609.748, subd. 6(d). The HRO Statute provides that "[t]he court . . . shall refer the violation of the [HRO] to the appropriate prosecuting authority for possible prosecution." Id. § 609.748, subd. 6(i).

**B. Plaintiffs**

Plaintiff CAL is a non-profit corporation located in Minneapolis, Minnesota. Compl. [Docket No. 1] ¶ 3. CAL is not an organization with members but has 150 subscribers ("agents") with which CAL communicates. Id. ¶¶ 4, 39. Redding is the co-founder and president of CAL. Id. ¶ 13. CAL and its agents engage in advocacy against pornography, sexual exploitation, and sexually-oriented businesses. Id. ¶ 4. Since 2010, CAL and its agents have communicated with businesses that advertise in City Pages, a Minneapolis news publication, and asked those businesses to stop this advertising because City Pages also publishes advertisements for sexually-oriented businesses. Id. ¶¶ 35–38, 45–50, 53, 55.

**C. Plaintiffs' Interactions with Frost Law Firm**

In March 2019, Redding saw an advertisement in City Pages for R. Leigh Frost Law, Ltd., a Minneapolis law firm. Id. ¶ 76. On March 15, 2019, Redding sent a postcard to the law firm's principal, R. Leigh Frost ("Frost"), asking Frost to stop advertising in City Pages. Id. ¶ 82, Ex. 11. The postcard stated, "Porn tears families apart. City Pages promotes strip clubs and porn. As a woman, are you ok with that?" Id. Around the same time, the Frost Law Firm received a nearly identical postcard from an unknown sender, as well as an email asking that the Frost Law Firm end advertising in City Pages. Id. ¶¶ 85, 86, Ex. 11. On March 20, 2019, Frost sent the postcards back to Plaintiffs with a letter asking them to stop contacting her. Id. ¶ 90, Ex. 11. In the letter, Frost wrote that she found the postcards "misinformed and offensive." Id. Ex. 11. On March 22, 2019, Frost responded to the email and told the sender to stop contacting her. Id. Ex. 11. On March 28, 2019, the Frost Law Firm received a third postcard from a CAL agent. Id. ¶ 86, Ex. 11.

Later that day, Frost filed a petition for an ex parte HRO under Minn. Stat. § 609.748 on behalf of herself and the Frost Law Firm. Id. ¶ 98, Ex. 11. The petition alleged that Frost and the Frost Law Firm were victims of harassment by CAL and its agents based on the three postcards and the email. Id. Ex. 11. The petition also stated that Frost was concerned CAL would harass her at her home and in her neighborhood. Id. On March 29, 2019, a Hennepin County District Court judge issued a temporary HRO against CAL and its agents. Id. Ex. 12. The HRO was served upon CAL on April 6, 2019, by leaving a copy with Redding. Martenson Decl. [Docket No. 13] Ex. C. After being served with the HRO, Plaintiffs stopped communicating with the Frost Law Firm and all other businesses about their advertising in City

4

Pages, because Plaintiffs did not want additional businesses to obtain HROs against them. Compl. ¶¶ 101–102, 111, 173–74.

On June 14, 2019, CAL moved to dismiss the temporary HRO, arguing CAL's conduct did not constitute harassment under subdivision 1(a)(1) of the HRO Statute. Martenson Decl. Ex. H at 8–12. CAL also argued the HRO Statute violates the First and Fourteenth Amendments of the U.S. Constitution. Id. at 12–21. On July 11, 2019, Frost and CAL reached a settlement, and the Hennepin County District Court vacated the HRO. Id. Ex. L. The Complaint does not allege that Freeman was aware of or involved in the civil harassment proceeding. See generally Compl. The Complaint also does not allege that CAL violated the HRO, or that Freeman prosecuted or threatened to prosecute CAL for violating the HRO. Id.

**D.  Present Lawsuit**

In May 2020, Plaintiffs filed this pre-enforcement challenge to subdivision 1(a)(1) of the HRO Statute. See generally Compl. The Complaint alleges that although the HRO has been vacated, Plaintiffs have stopped protesting against businesses advertising in City Pages. Id. ¶ 173. The Complaint further alleges that Plaintiffs are planning to engage in the same activities as in the past to protest against businesses advertising in City Pages by contacting businesses through mail and email and asking the businesses to cease their relationship with City Pages. Id. ¶¶ 45–49, 122, 177, 265. Their concern is a fear that this conduct will subject them to future HROs and later criminal prosecution. Id. ¶¶ 15–16, 22–23, 111, 127, 175.

Plaintiffs allege that subdivision 1(a)(1) of the HRO Statute violates the First Amendment's free speech protections, facially and as applied to Plaintiffs, because the provision does not include an exception for political speech activities. Id. ¶¶ 112–241 (Counts I, II, and

5

III). Plaintiffs further allege that the HRO Statute is unconstitutionally vague under the Fourteenth Amendment. Id. ¶¶ 242–57 (Count IV). Lastly, Plaintiffs allege that the HRO Statute violates the First Amendment's right to association. Id. ¶¶ 258–79 (Count V).

As relief, Plaintiffs seek declarations that subdivision 1(a)(1) of the HRO Statute is unconstitutional facially and as applied, that any HRO issued under the statute is unconstitutional, and that their civil rights were violated. Id. at Relief Requested ¶¶ 1–6, 8. Plaintiffs also seek a permanent injunction against Freeman to prevent him from enforcing or threatening to enforce subdivision 1(a)(1) of the HRO Statute. Id. at Relief Requested ¶ 7. Additionally, Plaintiffs seek attorney fees and costs. Id. at Relief Requested ¶ 9.

Freeman moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Minnesota Attorney General adopts Freeman's argument that the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim because the HRO Statute is constitutional. See Notice Intervention at 4.

**E.  City Pages' Closing**

On October 28, 2020, while Freeman's motion to dismiss was under advisement with the Court, City Pages ceased its publication and permanently ended its operations due to a decline in advertising revenue during the COVID-19 pandemic. See "City Pages is closing, ending the era of alternative weeklies in Twin Cities," Evan Ramstad, StarTribune (Oct. 28, 2020), https://www.startribune.com/city-pages-is-closing-ending-era-of-twin-cities-alt-weeklies/572897

771/ (last visited Nov. 9, 2020).[1]

## III.  DISCUSSION

### A. Rule 12(b)(1):  Lack of Subject Matter Jurisdiction

Freeman argues the Complaint must be dismissed under Rule 12(b)(1) for Plaintiffs' failure to establish Article III standing, which is a prerequisite to subject matter jurisdiction.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992).

**1.  Rule 12(b)(1) Standard**

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on the court's subject matter jurisdiction.  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  A factual attack is presented when, as here, a defendant challenges the existence of the underlying jurisdictional facts.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6)

---

[1] The Court takes judicial notice that City Pages is no longer operating.  Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  "A court may take judicial notice at any stage of the proceeding whether or not the notice is requested by the parties."  Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009) (citing Fed. R. Evid. 201(c), (f)).  Here, the closing of City Pages has been confirmed by multiple reliable news sources including the StarTribune newspaper, whose parent company StarTribune Media Company LLC owns City Pages.  See "City Pages is closing, ending the era of alternative weeklies in Twin Cities," Evan Ramstad, StarTribune (Oct. 28, 2020), https://www.startribune.com/city-pages-is-closing-ending-era-of-twin-cities-alt-weeklies/572897771/ (last visited Nov. 9, 2020); see also "City Pages closes after 41 years as Twin Cities alternative weekly," Frederick Melo, Pioneer Press (Oct. 28, 2020), https://www.twincities.com/2020/10/28/city-pages-closes-after-41-years-as-twin-cities-alternative-weekly/ (last visited Nov. 9, 2020).

7

CASE 0:20-cv-01081-ADM-TNL Doc. 27 Filed 11/09/20 Page 8 of 12

safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation omitted).

### 2. Standing

"Article III standing is a threshold question in every federal court case." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003). The party invoking federal jurisdiction has the burden of establishing standing. Lujan, 504 U.S. at 560. To meet this burden, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct of the defendant; and (3) a likelihood that a favorable ruling will redress the alleged injury. Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005) (citing Lujan, 504 U.S. at 560–61).

Freeman argues Plaintiffs cannot satisfy the injury-in-fact element of Article III standing because their claimed decision to chill their speech was not objectively reasonable. "To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution. Rather, the plaintiff needs only to establish that [s]he would like to engage in arguably protected speech, but that [s]he is chilled from doing so by the existence of the statute." 281 Care Comm. v. Arneson, 638 F.3d 621, 627 (8th Cir. 2011) (internal citation omitted). In evaluating First Amendment standing, the relevant inquiry is whether the plaintiff's decision to chill her speech is "objectively reasonable." Id. "Reasonable chill" is established when (1) "a plaintiff shows 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute,'" and (2) "'there exists a credible threat of prosecution.'" Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)) (alteration in original).

Here, Plaintiffs' decision to chill their speech was not objectively reasonable because

Plaintiffs have not shown that their intended course of conduct is proscribed by the HRO Statute. The HRO Statute defines harassment as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target."  Minn. Stat. § 609.748 subd. (a)(1).  The Minnesota Court of Appeals has construed this provision as being "directed against constitutionally unprotected 'fighting words' likely to cause the average addressee to fight or [to] protect one's own safety, security, or privacy; 'true threats' evidencing an intent to commit an act of unlawful violence against one's safety, security or privacy; and speech or conduct that is intended to have a substantial adverse effect, i.e., is in violation of one's right to privacy."  Dunham v. Roer, 708 N.W.2d 552, 566 (Minn. Ct. App. 2006).  Additionally, for conduct to constitute harassment, (1) the harasser's conduct or intent must be "objectively unreasonable," and (2) the person subject to harassing conduct must have an "objectively reasonable belief" that the conduct was "substantially adverse" to their "safety, security, or privacy."  Id. at 566–67.  Conduct that is merely argumentative or inappropriate does not constitute harassment.  Witchell v. Witchell, 606 N.W.2d 730, 732 (Minn. Ct. App. 2000).

Plaintiffs' communications with Frost and her law firm were not "objectively unreasonable" and did not have a "substantially adverse effect" on Frost's "safety, security, or privacy."  The communications did not substantially affect Frost's safety or security because they did not threaten Frost or the Frost Law Firm.  Compl. ¶¶ 91–92, 95–96, 156–57.  Rather, the communications merely requested the Frost Law Firm to stop advertising in City Pages.  Id. ¶¶ 84–85, 105.  Plaintiffs had no physical contact with Frost and did not invade her or the Frost

9

Law Firm's personal space. Id. ¶ 97. The communications also did not have a substantially adverse effect on Frost's privacy. All of the communications were directed to the Frost Law Firm (located in a commercial building) using the street address provided in the firm's City Pages ad and the email address posted on the Frost Law Firm's publicly advertised website. Compl. ¶ 78. In other words, the communications were only sent to the addresses that Frost herself publicly advertised. None of the communications were sent to Frost's home or to her friends, family, or clients. Id. ¶¶ 93–94. The content of the communications did not include sensitive information about Frost or the Frost Law Firm. Id. ¶ 93.

Plaintiffs allege they want to engage in the same activities they engaged in before—sending anti-pornography postcards and emails to businesses asking them to reconsider their advertising in City Pages. Id. ¶¶ 103–110, 122. Because this conduct does not have a "substantial adverse effect on the safety, security, or privacy of another," it is not harassment under the HRO Statute. Minn. Stat. § 609.748 subd. 1(a)(1). Plaintiffs do not allege that they intend to do anything that would constitute harassment, much less that they want to violate an HRO issued by a court. Accordingly, Plaintiffs' decision to chill their speech was not objectively reasonable and cannot provide a basis for Article III standing. See Republican Party of Minn., Third Cong. Dist. v. Klobuchar, 381 F.3d 785, 792–93 (8th Cir. 2004) (affirming dismissal of First Amendment challenge for lack of standing because conduct was not proscribed by the challenged statute).

### 3. Mootness

The Court lacks jurisdiction over Plaintiffs' as-applied claims for the additional, independent reason that the permanent closing of City Pages has rendered the claims moot. "In

order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." Id. at 789–90.  "Federal courts are not empowered 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Id. at 790 (quoting Church of Scientology v. United States, 506 U.S. 9, 12 (1992)).  "A case becomes moot if it can be said with some assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id.  A narrow exception to the mootness doctrine exists if a controversy is "capable of repetition, yet evading review." Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1976 (2016).  This exception "applies only in exceptional situations, where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Id. (internal quotation marks omitted, alterations in original).

Plaintiffs' lawsuit is based on their desire to "engage in political speech activities to protest against businesses who advertise in . . . City Pages." Compl. ¶ 177.  Because City Pages is the only publication addressed in the Complaint and is no longer being published, the Complaint "fail[s] to demonstrate a live dispute involving the actual or threatened application of [the HRO Statute] to bar particular speech." Renne v. Geary, 501 U.S. 312, 320 (1991). Additionally, the dispute does not fall within the mootness doctrine's narrow exception for controversies capable of repetition yet evading review.  Even if there is a reasonable expectation that Plaintiffs will engage in future protests that allegedly implicate the HRO Statute, the

controversy would not necessarily be too short in duration to evade timely review by a court. For example, Plaintiffs' protest of business advertisement in City Pages lasted nearly a decade. See Compl. ¶ 55 (stating CAL had been protesting business advertisement in City Pages "[s]ince 2010").

**B. Rule 12(b)(6): Failure to State a Claim**

Because the Court concludes that Plaintiffs lack standing under Article III, the Court is without subject matter jurisdiction to determine whether the Complaint states a claim for relief under Rule 12(b)(6).

## IV.  CONCLUSION

Based upon  upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Hennepin County Attorney Mike Freeman's Motion to Dismiss [Docket No. 10] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**[2]

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  November 9, 2020

---

[2] Entry of judgment will be stayed until Monday, November 16, 2020, in accordance with Fed. R. Evid. 201(d) and (e).